UNITED STATES, Appellee

v

MICHAEL A. BUGROS, Airman Second Class,
U. S. Air Force, Appellant

9 USCMA 276, 26 CMR 56

*Lieutenant Colonel Ellis L. Gottlieb* and *Major Dwight R. Rowland* were on the brief for Appellant, Accused.
*Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel John F. Hannigan* were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by a general court-martial for the offense of committing an indecent assault upon a married woman, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was found guilty as charged and sentenced to be discharged from the service with a bad-conduct discharge, to forfeit all pay and allowances, and to be confined for a period of one year. The convening authority approved the findings and sentence, and a board of review in the office of The Judge Advocate General of the Air Force affirmed. We granted review to consider whether the inclusion of certain unfavorable references in the staff judge advocate's review prejudiced the substantial rights of the accused.

Because the issue involves a posttrial matter, it is not necessary for us to relate the facts of the indecent offense. Suffice it to say that they proved the guilt of the accused beyond a reasonable doubt.

In accordance with the policies of the Air Force, a clemency interview was conducted by an officer who had had no disqualifying participation in the case. The review submitted by him was complete and comprehensive, and it furnished a lifelong picture of accused's character and behavior. Perhaps the reason for the complete coverage may be found in the statement of the interviewing officer that the accused talked incessantly and rapidly for two hours and thirty minutes and that the only questions asked were those necessary to obtain the basic information. Parenthetically we note that prior to the interrogation of the accused, he was informed of the nature and purpose of the interview and advised of his rights under Article 31 of the Uniform Code of Military Justice, 10 USC § 831.

Without relating many of the transgressions acknowledged by the accused, we furnish a condensed version of his own characterization. He was reared in a very rough environment and was always in trouble with the civilian authorities. He was constantly being arrested by the police for questioning in connection with his misdeeds. He varied his membership in gangs of law breakers which continuously kept him in trouble. He was tried for robbery by strong arm methods. He served a term in a boys' reformatory, which he enjoyed more than his home life. He voluntarily engaged in aggravated assaults upon others who had mistreated him. He married at the age of fifteen, and he fraudulently enlisted in the Air Force. He was offered a general discharge but, pursuant to his request, the Air Force waived his fraud and offered him a chance to become a respected member of the service. In April 1957, he was arrested in Arizona and charged with molesting a nine-year-old girl, and at the time of the review he was awaiting trial. In May of the same year, he was arrested for assaulting the wife of an Air Force sergeant, but this offense was reduced to disturbing the peace and he was sentenced to thirty days in jail. His dereliction brought on marital difficulties, and he was disliked by his neighbors as they considered him a sex fiend. He feigned insanity to obtain a discharge from the service, and he committed the offense for which he was convicted, not to satisfy his sexual desires but to create the impression that he was a psychopath. He sought to

277

induce an airman to cover up for him in this instance. He believed he received a fair trial and that his bad-conduct discharge and confinement at hard labor for one year was a very cheap price to pay for eighteen years of bad conduct. He was not concerned about receiving a punitive discharge, and his attitude about rehabilitation can best be expressed in these words which are quoted:

". . . 'Okay, I've had it. I don't know whether I should stay in the Air Force or whether I should get out; if the Air Force keeps me in, I will be happy because I like the work but I don't know whether I can keep out of trouble or not.' "

With those voluntary admissions as a starting point, we pass on to consider other information collected by the interviewing officer. It must be conceded that in relating the views of the accused's military superiors, he included some derogatory information not furnished by accused. Part of that information consists of the opinions of those officials. Obviously, there was unanimity that the accused should not be retained in the service, and at this point we pause to state that the reviewing officer took some pains to find contrary opinions, for he stated:

"Much time was spent by the interviewing officer, trying to find some individual on the base who could say something favorable about the accused which could intelligently be considered as clemency material. The only favorable comment to be located was that he did a good job while on the job. But all of these individuals at the same time were of the opinion that the accused should be discharged from the service."

Generally speaking, the derogatory information furnished by the immediate commanders, enlisted and commissioned, consisted of accused's lack of veracity, his criminal tendencies, his association with members of the opposite sex, both children and adults, and his uselessness to the service. Significantly enough, the information gleaned from those sources excepting the personal opinions fits into the pattern drawn by the accused, and the only wholesome data obtained by the interviewing officer came from these same sources, for the squadron commander and the sergeant in charge both stated in substance that while the accused was performing his assigned tasks he was a good worker.

In United States v Vara, 8 USCMA 651, 25 CMR 155, we recommended that the derogatory part of a staff judge advocate's review be served on the accused. This apparently was not done in the case before us, but our advice had not reached the field at the time this interview was conducted. Therefore, although the best practice may not have been used, we pass that aspect of the case and look to the rule a majority announced in United States v Taylor, 9 USCMA 34, 25 CMR 296, and United States v Williams, 9 USCMA 36, 25 CMR 298. In those instances, we followed the concept that we would look to the record as a whole to ascertain whether the accused had been deprived of a substantial right by inclusion of certain derogatory matter in a review.

In the case at bar, we conclude that the personal history and the criminal behavior pattern, past and present, furnished by the accused would, standing alone, preclude any reviewing authority from exercising clemency. The information gleaned from third parties so closely parallels accused's own characterization of himself that it merely corroborates that which has already been acknowledged. Moreover, accused's announced mental attitude—that he would give no assurance of living within the law—effectively destroys any hope for leniency which he could expect to receive from reviewing authorities. In summation, accused so vividly painted himself as an undesirable member of the military community that the views of his superiors could add nothing to his self-destruction. Accordingly, we find no prejudice.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

Although I dissented in United States v Taylor, 9 USCMA 34, 25 CMR 296,

and United States v Williams, 9 US CMA 36, 25 CMR 298, those cases have fixed the law of the Court in this area.

I now concur with the result reached by the majority.