UNITED STATES, Appellee

v

WILLIE J. JACKSON, Private E–2,
U. S. Army, Appellant

9 USCMA 298, 26 CMR 78

No. 10,496

Decided June 6, 1958

*Major Frank C. Stetson* argued the cause for Appellant, Accused.

*First Lieutenant John E. Riecker* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee, First Lieutenant Jon R. Waltz,* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In a trial by general court-martial, the accused pleaded guilty and was convicted of three specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. His sentence was dishonorable discharge, total forfeitures, and confinement for eighteen months. Prior to the Article 32 investigation, before charges were referred for trial, the accused made a pretrial statement wherein he admitted stealing two typewriters. He also stated that other enlisted men had given him a field jacket, five fatigue jackets, and ten pairs of fatigue trousers which had been taken from clothing warehouses belonging to the United States Government. Some few days later he signed a second statement in which he admitted the theft of an overcoat and field jacket. He was charged with theft of the typewriters, the overcoat and field jacket, but the fatigue clothing was not made the subject matter of a specification. The two statements made by the accused and those of other witnesses which were fully corroborative, were used in the Article 32 hearing of this case. The pretrial statements were not introduced in evidence at the trial on the merits, but a stipulation of facts was admitted which incorporated those portions of the statements which pertained to the larcenies charged.

After the trial, the staff judge advocate, in that section of his review dealing with his recommendations for clemency, wrote:

". . . In addition, there are indications that this accused has been involved in other matters involving theft of Government property, not charged here."

The review noted that in a post-trial interview with the staff judge advocate, the accused had expressed a desire to make the Army his career. The excerpt we have quoted was utilized by the reviewing officer in formulating his judgment that the accused was unfit for rehabilitation. No doubt the additional crimes mentioned by him buttressed his observation that the accused's attitude at the time of the interview reflected a feeling that his crime was "getting caught rather than in the actual taking."

The convening authority approved the sentence imposed by the court-martial, suspending execution of the punitive discharge until the date of accused's release from confinement or the completion of appellate review of his case, whichever was the later. Before the board of review, the accused raised the issue of an unfair and biased post-trial review. He there asserted that the staff judge advocate had prejudiced him in the eyes of the convening authority by suggesting vague and derogatory misconduct not found in the record of trial without an opportunity being given him to disprove the accusations. The board of review in a "short form" decision, which made no mention of the error asserted by the accused, affirmed the findings but reduced the confinement and forfeitures to one year. We granted his petition for review in order to consider the same assignment of error.

United States v Lanford, 6 USCMA 371, 20 CMR 87, by way of comment, is authority for the proposition that the staff judge advocate may direct the attention of the convening authority to matters affecting sentence detrimental to the accused which are not found in the record. However, the decision goes on to say that, if such facts are related, "justice to the accused requires that he be given a fair and reasonable opportunity to rebut or to explain any matter which may be detrimental to him." In United States v Griffin, 8 USCMA 206, 24 CMR 16, we made positive what we

**299**

announced in *Lanford* by holding it was "error for the convening authority to consider, in his deliberations on the sentence, adverse matter from outside the record without affording the accused an opportunity to rebut or explain that matter."

The argument presented by accused raises the question of what we meant when we used the phrase "found in the record." There are two possible constructions. The first interpretation is that we intended to limit the information to those items which were introduced into evidence on the findings and sentence. The alternative construction is that we meant to include all the information which by law is a necessary part of the judicial proceedings from the time charges are sworn to until the staff advocate judge has reviewed the record, and about which the accused would be informed. In many instances, the information might be identical, but it could vary as this case aptly illustrates. Here the evidentiary items which support the comment of the reviewing officer are found in accused's statements made a part of the Article 32 investigation. The admissions therein contained were used in the pretrial hearing but, as a result of a stipulation of facts which covered only the offenses charged, they were not all placed before the court-martial.

In this line of decisions, we have been concerned with the Government's use of alleged acts of misconduct of an accused when he has not been afforded a fair chance to avoid, explain, or deny their commission. In the two aforementioned cases and in United States v Vara, 8 USCMA 651, 25 CMR 155, we were confronted with the use of criminal acts entirely separate from the offenses investigated or tried. In those instances, we concluded that the accused had been denied his day before the convening authority or the board of review, as the case may be, for he had been furnished no opportunity to show the possible falsity or inaccuracy of the misconduct considered by the reviewing officers. While this case has some differences which might be of moment, we believe confusion will be less rampant

300

and there will be less possibility of unfairness to an accused if the record is limited to the transcript examined by the defense. With that interpretation in mind, we hold that, since the staff judge advocate failed to afford accused an opportunity to rebut or explain, he erred in using evidence from the pretrial statements which are not reflected in the transcript.

Next, we are required to answer accused's contention that the staff judge advocate may have been referring to some vague and indefinite acts outside those disclosed in his confession. The resolution of that problem gives us little concern. The accused had been in the service some ten and one-half months. The comment was made in that paragraph of the review which deals with clemency but which is divided into two parts, namely, civilian and military background. In the former, there is no mention of prior acts of misconduct, but, in advising about accused's military background, the reviewer made the statement hereinbefore quoted. When it is analyzed, it points clearly to the proposition that there are some indications that the accused was implicated in other offenses involving the theft of Government property with respect to which no charges were filed. The facts found in the confessions so adequately and accurately describe the misconduct referred to by the staff judge advocate that, in the absence of a showing to the contrary, no one would question the assertion that the reviewer was using accused's own statement as the basis for his comment.

This brings us to the contention that, even though accused furnished the facts about his service misbehavior, he was prejudiced. First, he asserts he was not informed his uncharged criminal conduct was to be disclosed to the convening authority. We believe that by the exercise of a modicum of judgment, he would know his service conduct would come under scrutiny by that functionary. He had been informed on at least three prior occasions that any admissions of his misbehavior could be used against him. There was a posttrial interview with the staff judge

advocate for the purpose of determining his potentiality for rehabilitation, and his service conduct must have been a subject of discussion. The acts of misbehavior charged and uncharged were committed within an eight-week period, some were similar in nature, and it would be unreasonable for him to suppose that, in a determination of his potentiality for rehabilitation, acts so closely related in time, place, and details to the larcenies would not be the subject of consideration.

Second, he contends there is a fair probability of prejudice because he was not afforded a chance to meet the accusation. In spite of his assertions, we ascertain no reasonable possibility, let alone probability, that he would refute evidence which he himself furnished and which he has already declined to dispute on several propitious occasions. At no time has he contended he desires to offer anything in explanation, and the futility of his present contention can be shown by merely stating that, if this record was returned to a new convening authority, the accused would find himself in the somewhat embarrassing situation of admitting the acts or confessing he has falsified. Choosing the latter alternative would hardly aid his cause.

Going one step further and assuming we reversed, the accused would only be getting a variation of a right which he previously refused or neglected to exercise. The record shows he was afforded an opportunity to present his side of the controversy to a board of review. His counsel was familiar with the views we expressed and the procedure we directed in United States v Lanford, supra, and he knew the accused was entitled to a hearing before that agency. While counsel for the Government misconceived the principle we announced in that case, they conceded accused was entitled, as a matter of right, to furnish the board of review with evidence favorable to his cause. They even went further and proposed that he adopt the course. For reasons which are apparent from this record, accused did not accept the proposal. Therefore, if we were to dispose of this case in the manner we ordered in United States v Lanford, supra, the unique situation would develop that the accused would be given a right which he has already rejected. No wonder his counsel sought to have us bypass the board of review and send the record back to the convening authority.

Finally, we are unable to see any benefit which would accrue to this accused by sending this case back to a new convening authority. Conceding that he should have been informed of the contents of the review prior to the action of the convening authority, we neither envisage any worthwhile steps he could have taken at that time nor on a new review. On the first occasion, he was striving hopefully to obtain clemency, and in the earlier proceedings he had openly conceded his wrongdoings. A complete account of his illegal activities was in the file and available to be read. He had pleaded guilty to most of the offenses, and any hope he had for clemency by the convening authority had to be based on a showing that he had erred but realized his mistake and had mended his ways. To dispute at that level those matters he had previously admitted would only tend to seal his doom.

By affirming this case, we do not intend to discount the advice we rendered in United States v Vara, supra. The many possibilities of prejudicing an accused would be obviated by adopting the simple procedure there recommended. For purposes of emphasis, we restate our views:

". . . The Services could correct the deficiency by appropriate regulations, while the only method available to us is to set aside a sentence when the accused has been prejudiced. Therefore, to improve the administration of military justice, to avoid unnecessary reversals, and to bring some semblance of orderly procedure out of what appears to be a rather obscure method of operation, we suggest that a practice of serving a copy of the review, or those parts which contain matters of fact adverse to an accused, on the accused or his counsel sometime prior to action by the convening authority be adopted. The

time of service should be early enough to permit a reply thereto if accused is so disposed. If that procedure is used, an accused will be afforded a fair opportunity to answer new matters which are prejudicial to him and to present information which might be helpful to his cause. Furthermore, the convening authority and higher reviewing authorities who have power to modify sentences may be furnished with a more comprehensive and impartial base for determining the appropriateness of sentence. Finally, this Court will not be required to speculate on accused's familiarity with the facts being used against him."

The decision of the board of review is affirmed.

Judge FERGUSON concurs in the result.

QUINN, Chief Judge (concurring in the result):

The first sentence in the clemency section contains the statement that "the following facts were elicited" in a "personal post-trial interview" with the accused. Although the remark appears under the first subsection, titled "Civilian Background," it clearly embraces the matter in the second subsection, which is headed "Military Background." Reading the review as a whole, I am convinced the staff judge advocate discussed the adverse matter with the accused. Accordingly, I concur in the result.