UNITED STATES, Appellee

v

RAYMOND B. BARROW, Private E–1, U. S. Army, Appellant

9 USCMA 343, 26 CMR 123

No. 11,070

Decided June 6, 1958

*First Lieutenant Hazen V. Hatch* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to absence without authority from August 9, 1957, to September 14, 1957, and escape from confinement on October 7, 1957, in contravention of Articles 86 and 95 of the Uniform Code of Military Justice, 10 USC §§ 886 and 895, respectively. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months. The convening authority and the board of review affirmed both the findings and sentence. We granted accused's petition for review to consider the propriety of the staff judge advocate's inclusion of certain derogatory information in his review. The granted issue brings into prominence the reference to misconduct committed by the accused when he was sixteen years of age. We have, therefore, extended the issue to include a consideration of the question of whether a reviewing authority may be informed of an accused's prior juvenile delinquencies.

In United States v Roark, 8 USCMA 279, 24 CMR 89, we held that juvenile proceedings were inadmissible at the trial to impeach the accused's credibility as a witness. Counsel for the defense now importune us to extend that rule to preclude the convening authority from considering for clemency purposes an accused's life pattern during minority if his behavior has been offensive. This we are not constrained to do.

There is no irreconcilable conflict in concepts which prevent the use of juvenile misdeeds before findings of guilt and innocence, and then permit their consideration by the reviewing author-

**344**

ity on the punishment he deems appropriate. In fact, some of the states have embodied such provisions within their statutory law. See, Smith-Hurd Ill Ann Stat, c 23, § 190 (Supp 1956); Ann Law of Mass, c 119, § 60 (1949); Ohio Rev Code Ann, § 2151.29 (1953). In civilian courts, a judge may use probation reports which comprehensively cover the defendant's early environment, family background, character, behavior, and many facets of his life, to guide him in arriving at an appropriate sentence. They afford him a solid foundation for the imposition of a proper punishment, but they cannot be used by the jury before conviction.

In military law, before any similar information is usable by a convening authority, sentence has been imposed and he is barred from changing the sentence, except in favor of the accused. With that limitation imposed on a reviewing authority, the prior bad conduct of an accused cannot be used to fix the original sentence, it can only be used to diminish his possibilities of ending up with a lesser sentence than the one imposed.

Courts-martial pass on the guilt of an accused, and they are hedged in by strict evidentiary and procedural limitations. Rules of evidence have been fashioned to narrow testimony to that which is strictly relevant to the particular offenses charged. These rules are based in part on a necessity to prevent the trial of collateral matters. In addition, they are designed to prevent court members from being influenced on their findings by evidence that the accused had engaged in other misconduct. Many are the decisions holding that, in

the usual situation, evidence of prior acts of misconduct has no place in a jury trial because of the possibility that the defendant is more apt to be convicted because he is a bad man than is a first offender. That is one of the policy considerations underlying our holding in United States v Roark, supra. There we concluded that bringing juvenile court proceedings to the attention of the court-martial before findings might result in an accused being convicted because of his youthful indiscretions. In that connection, it is to be remembered juvenile proceedings are informal in nature and in many states do not result in conviction. Moreover, the state may not be put to the test of proving guilt beyond a reasonable doubt in the manner required in courts of general jurisdiction. Therefore, the use of prior juvenile adjudications to prove the substantive offense being tried may be grossly unfair to an accused.

An entirely different philosophy underlies the use of minority misconduct in determining the appropriateness of sentence. The modern philosophy of penology is that the punishment should fit both the offender and the crime. We have stressed individualized reviews, and if that principle is to guide a convening authority, every offense in a legal category should not call for identical treatment on sentence without regard to the past life and habits of the particular offender. It ought to be obvious that for a convening authority to deal properly with the punishment which will fit the particular accused, he should give consideration to many factors. In civilian courts, a judge is primarily concerned with the protection of society, the discipline of the wrongdoer, the reformation and rehabilitation potential of the defendant, and the deterrent effect on others who are apt to offend against society. Those are all essential matters to be considered by a convening authority but, in addition, he must consider the accused's value to the service if he is retained and the impact on discipline if he permits an incorrigible to remain in close association with other members of the armed services.

In order intelligently to assess an appropriate sentence and to serve the military community properly, it is necessary that the convening authority be furnished with information on the life of the accused, his background and his family, his early training, his capacity to conform to the norms of society, his military record, his mental capabilities, his rehabilitation potential, his value and many other items touching on his character and behavior. To obtain that sort of information and to assist the convening authority in appraising the probability of reforming and rehabilitating the accused, the services have adopted post-trial clemency proceedings which we have equated to probationary measures. They must be conducted, if that useful purpose is to be served, and, in general, they have not resulted in making the lot of the accused harder. On the contrary, the fullest information possible concerning his life and characteristics ofttimes results in his being less severely punished and restored sooner to duty.

A convening authority has unlimited power to help an accused, but he also has a duty to consider the rights of the Government. If we are to permit post-trial interviews to work to the mutual benefit of both, we must not say to convening authorities that they may consider a good youthful record but must close their eyes if the past is bad. The services invariably contain some bad character risks, and we would hide ourselves from reality if we did not notice the crimes of violence committed by minors. Too many youthful gangs bent on murdering, raping, yoking, stealing, and assaulting are roaming the city streets for us not to know that youthful incorrigibles are difficult to reform. To make an intelligent estimate, in performing his statutory duty to affirm so much of the sentence as he deems appropriate, a convening authority should know his subject well and, if the accused's life history shows he is a juvenile gangster, that should not be concealed from the evaluator. Surely we would make a farce out of proceedings founded on wisdom and experience if we required the convening authority to govern his vistas of inquiry by the calendar. We, therefore, hold that it is permissible for a reviewing authority to consider

any past misconduct of an accused in assessing the appropriateness of sentence, regardless of his age at the time of commission unless too remote to be of any significance.

## II

That brings us to the issue we permitted to be argued. In relating the civilian background of the accused, the staff judge advocate in his review stated:

"On post-trial interview, the accused corroborated the matter related by defense counsel in the unsworn statement (summarized in 3c, herein). He also stated that he is an 18-year old, single, resident of Maryland, the third oldest of six children of living parents. He completed the 10th grade at the age of 16 and went to work as a telephone lineman earning approximately $90.00 a week after taxes. He quit this employment and joined the Army. At the age of 16 he was placed on probation for an indefinite period by the local court in Aberdeen, Maryland, for taking hub caps off the automobile of his school principal. He was released from probation on 15 June 1956. He disclosed this offense on enlistment and received a waiver of the offense. He denies, and there is no evidence of, any other criminal record in civilian life."

A fair reading of this paragraph shows that the information was furnished by the accused, and it would be of no substantial benefit to afford him an opportunity to deny it. But more important is the fact that the official records disclose that when he sought to enlist in the Army, he made the same disclosure to the agents of that service and obtained a waiver to permit him to enlist. It could hardly be contended, therefore, that the staff judge advocate used information which was unknown to the accused or which he could reasonably expect would not be called to the attention of the reviewing official.

There are other bits of information in the record which show the utter improbability of the accused's being prejudiced by not being informed of the contents of the review. In his pretrial statement, he assigns as his reason for breaking out of the stockade a desire to be separated from the service. Furthermore, defense counsel made an oral statement at his request, and counsel ended his remarks by stating: "The accused feels it is in the best interests of the United States Government and himself that he be discharged from the service." Finally, his military record shows he is a recidivistic absentee. He had at least two prior convictions for unauthorized absence, and he was serving a sentence for committing the same offense when he escaped from lawful confinement. Therefore, the mere reference to stealing hub caps would be trifling and would have no impact on the action of the convening authority. United States v Taylor, 9 USCMA 34, 25 CMR 296; United States v Williams, 9 USCMA 36, 25 CMR 298; and United States v Bugros, 9 USCMA 276, 26 CMR 56.

For the foregoing reasons, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.