UNITED STATES, Appellant

v

RALSTON OWENS, Acting Corporal, U. S. Marine Corps, Appellee

11 USCMA 240, 29 CMR 56

*Major Ted H. Collins,* USMC, argued the cause for Appellant, United States.

*Lieutenant (jg) Frederick A. Cone,* USNR, argued the cause for Appellee, Accused.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

On the accused's plea of guilty a special court-martial[1] convicted him of four charges in violation of the Uniform Code of Military Justice. It adjudged a sentence which included a bad-conduct discharge. The convening authority approved the findings of guilty, but modified the sentence by mitigating the period of confinement to a lesser period of restriction and by reducing the amount of forfeitures from $70 to $60 per month for four months. He also suspended execution of the discharge with provision for automatic remission. As required by Marine Corps Order 5814.1, April 1, 1956,[2] the convening authority included in his action a summary of entries from the accused's service record which includes his awards and decorations, his average efficiency and conduct ratings, and previous disciplinary punishments imposed at office hours by the Company Commander. On review, a divided board of review held that the convening authority erred in his action because he "failed to afford accused an opportunity to rebut or explain" the previous punishments and, accordingly, modified the sentence. Pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, The Judge Advocate General of the Navy certified the case to this Court

for further review on the following issue:

"Was the Board of Review correct in holding that the convening authority erred in failing to afford accused an opportunity to rebut or explain instances of punishment awarded at office hours taken from the accused's service record book?"

On the basis of the mitigative action of the convening authority, it is reasonably arguable that the accused was not prejudiced in the slightest degree by the purported error. United States v Barrow, 9 USCMA 343, 346, 26 CMR 123; United States v Jackson, 9 USCMA 298, 26 CMR 78. However, the validity of the convening authority's action, not its effect, is the question before us; perforce, we turn to consideration of that question.

As early as United States v Gordon, 1 USCMA 255, 2 CMR 161, we held that an accused is entitled to a fair and impartial review. Over the years we applied that fundamental principle to a number of specific situations. One such situation is that in which the convening authority gives consideration to "adverse matter from outside the record without affording the accused an opportunity to rebut or explain that matter." United States v Griffin, 8 USCMA

---

[1] WC NCM 59-01283.

[2] In part, Marine Corps Order 5814.1, which is directed to "All Commanding Generals," provides as follows:

"3. In order to afford reviewing authorities with additional information upon which to base a determination, it is desired that the convening authority in those cases where he approved a bad conduct discharge, include in his action a brief synopsis of the disciplinary features of the service of the accused during his current enlistment or current extension of enlistment as reflected in the individual's service record book."

■■■■■■■■

206, 24 CMR 16; United States v Vara, 8 USCMA 651, 25 CMR 155. As we noted in United States v Smith, 9 USCMA 145, 147, 25 CMR 407, there are usually "two sides to every story." Affording the accused the opportunity to contest extra-record matter lessens "the possibility that the convening authority . . . will be influenced by only one side of the coin; namely, the side which militates against the accused." Ibid, page 147. For the most part the adverse matter consisted of derogatory statements by third parties of which the accused had no knowledge. United States v Griffin, supra; United States v Jackson, supra. We have had, however, several cases involving extracts from the military records of the accused. Two of these relate specifically to the accused's service record. In United States v Lanford, 6 USCMA 371, 20 CMR 87, the convening authority included in his action a statement of nonjudicial punishment previously imposed upon the accused. We upheld the convening authority's use of the record and sustained the right of the board of review to look at the contents of his action for the purpose of determining an appropriate sentence. The principal opinion in the case pointed out that Congress intended the board of review to have available, as far as possible, "the same facts relating to the sentence which were considered by the convening authority in his action." It then went on to say that if the convening authority considered adverse matter from outside the record of trial, "justice . . . requires that . . . [the accused] be given a fair and reasonable opportunity to rebut or to explain." On the basis of that statement, appellate defense counsel contends that the accused is entitled to the opportunity to rebut or explain matters in which he personally participated and which are part of his own service record. That the Lanford opinion does not go that far was made clear in our opinion in United States v Smith, supra. In the Smith case, part of the detrimental matter considered by the convening authority consisted of a statement of previous nonjudicial punishment imposed upon the accused, which was abstracted from a document en-

titled "Personal Evaluation Sheet of the Accused," prepared before trial by the accused's Company Commander. The Government argued that nonjudicial punishments were "matters of official record and well known to the accused." This circumstance, the Government maintained, distinguished the case from the Griffin-Vara type of case. We concluded that we did not need to determine the merits of the Government contention because it plainly appeared from the mitigative action of the convening authority that the accused "could not have been prejudiced by" the inclusion of the derogatory information in the staff judge advocate's review.

Not long after our decision in the Smith case, supra, we decided United States v Barrow, 9 USCMA 343, 26 CMR 123. There the staff judge advocate's review of the accused's background mentioned the fact that the accused had been adjudged a juvenile delinquent before he entered the Army. We held that the information could be considered by the convening authority in reviewing the sentence. We also considered whether the accused should have been accorded an opportunity to rebut or refute the reference to the juvenile offense, but we concluded the offense was so trifling in the context of the matters properly considered by the convening authority that it could not have had any "impact" upon his decision. Although dictum, our opinion made a significant observation which served to distinguish the situation then before the Court from that present in such cases as Griffin, Vara, and Jackson, supra. We said:

"A fair reading of this paragraph shows that the information was furnished by the accused, and it would be of no substantial benefit to afford him an opportunity to deny it. But more important is the fact that the official records disclose that when he sought to enlist in the Army, he made the same disclosure to the agents of that service and obtained a waiver to permit him to enlist. It could hardly be contended, therefore, that the staff judge advocate used information which was unknown to the accused or which he could reasonably expect

242

would not be called to the attention of the reviewing official."

Previous nonjudicial punishment is a factor which may be considered by the convening authority in review of the sentence. United States v Lanford, supra. As the subject of the punishment, the accused obviously has knowledge of it. We take judicial notice of the fact that he also knows the punishment is made a matter of official report and is included in his service record. In our opinion, he must reasonably expect that this record will be scrutinized by the convening authority to determine whether he should or should not mitigate the sentence adjudged by the court-martial. As long as the imposition of previous punishment remains a matter of record, the accused cannot refute or rebut it as a fact, which he might be able to do were it mere rumor, or report of other alleged misdeeds. As far as the fact of punishment is concerned, there is for the accused no "other side of the coin." True, he may explain the circumstances that led to the punishments, but there is nothing unfair about the convening authority's consideration of the record of punishments. In our opinion, the initial responsibility for explaining away the official record of events in which he participated rests upon the accused. Article 38, Uniform Code of Military Justice, 10 USC § 838, gives his defense counsel the right to submit a post-trial brief on any matter which "should be considered in behalf of the accused." It stretches the rule of fairness beyond reasonable limits to impose upon the convening authority the duty to ask for an explanation of previous misdeeds by the accused for which he was officially punished.

We answer the certified question in the negative. Ordinarily, our answer would require a remand of the case to the board of review for further consideration of the sentence. However, the only possible part of the sentence that can be affected at this time is that pertaining to the forfeitures. The amount involved is too small to justify further proceedings.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I dissent.

The majority's answer to the certified question once more raises the spectre of uncertainty in the area of post-trial sentence proceedings and, for no valid reason, seeks to limit our holdings concerning the right of the accused to rebut or explain derogatory information from outside the record of trial.

The accused was tried by a Navy special court-martial and sentenced to bad-conduct discharge, forfeiture of $70.00 per month for six months, confinement at hard labor for six months, and reduction to the grade of Private (E–1). The convening authority approved only so much of the sentence as provided for bad-conduct discharge, forfeiture of $60.00 per month for four months, restriction to specified limits for four months, and reduction to the grade of Private (E–2). He also probationally suspended the bad-conduct discharge with provision for its automatic remission at the end of a six-months' period. Included in the convening authority's action upon the record were the following comments:

"In compliance with Marine Corps Order 5814.1 of 1 April 1956 the following summarization of the previous record of the accused is included:

"On 23 January 1958 was awarded two weeks restriction by Commanding Officer at office hours for failure to go to his appointed place of duty.

"On 6 May 1958 was awarded ten days restriction by Commanding Officer at office hours for unauthorized absence.

"On 18 September 1958 was awarded fourteen days restriction by Commanding Officer at office hours for unauthorized absence.

"On 24 March 1959 was awarded fourteen days restriction by Commanding Officer at office hours for sleeping on post."

The supervisory authority approved

the sentence "as approved by the convening authority" and forwarded the record of trial to The Judge Advocate General of the Navy. Thereafter, a majority of the members of the board of review found that the convening authority acted improperly in failing to afford the accused an opportunity to rebut or explain the reference in his action to various nonjudicial punishments when such information came from outside the record of trial. The prejudice which they deemed might have flowed from the convening authority's dereliction was purged by reassessment of the sentence, together with reduction of the approved period of restriction to legal limits. The penalty which was ultimately affirmed extended only to bad-conduct discharge (probationally suspended), restriction to specified limits for a period of two months, forfeiture of $60.00 per month for two months, and reduction to the grade of "private first class (E–2) [sic]."

Following the action of the board of review, The Judge Advocate General of the Navy certified to this Court the question whether the board of review was correct in holding that the convening authority erred in failing to afford accused an opportunity to rebut the instances of nonjudicial punishment mentioned in his action upon the record.

At the outset, I desire to point out some factors, unmentioned by my brothers, which I deem pertinent to answering the certified question. Initially, it must be noted that a convening authority does not normally prepare a written review in special courts-martial. This chore is left to the supervisory authority. Uniform Code of Military Justice, Article 65, 10 USC § 865; Manual for Courts-Martial, United States, 1951, paragraph 85a. The latter officer is frequently located at a point distant from the convening authority's command. In the interests of having a knowledgeable action taken with respect to the sentence by the supervisory authority and the board of review, provision was made in Marine Corps and Navy regulations for the inclusion in the convening authority's action of matters bearing upon the approval of an appropriate penalty. As this is the same function performed by the clemency section of the staff judge advocate's review in the other armed services, it is apparent that the inclusion of adverse information therein must be governed by our decisions concerning the latter documents.

There can be no doubt that this Court has squarely and repeatedly held that an accused is entitled to an opportunity to rebut or explain adverse information from outside the record of trial when it is considered by the convening authority during the post-trial proceedings. United States v Lanford, 6 USCMA 371, 20 CMR 87; United States v Griffin, 8 USCMA 206, 24 CMR 16; United States v Vara, 8 USCMA 651, 25 CMR 155; United States v Sarlouis, 9 USCMA 148, 25 CMR 410; United States v Smith, 9 USCMA 145, 25 CMR 407. It is also certain that the prior instances of nonjudicial punishment mentioned in the convening authority's action are matters tending to influence adversely accused's opportunity for a reduction of his punishment. It is equally clear that they are not a part of the record of trial, for that "is limited to the transcript examined by the defense." United States v Jackson, 9 USCMA 298, 26 CMR 78. Parenthetically, I note that the last cited case involved information taken from the report of the pretrial investigating officer—an item certainly more closely related to the "record" than accused's personnel folder.

It would seem, then, that there is substantial basis for concluding the board of review correctly held that accused was entitled to rebut or explain the previous impositions of nonjudicial punishment.

My brothers point out, however, that accused "obviously has knowledge of" the Article 15 proceedings, for he was the individual punished. Moreover, they judicially note that the punishment is made "a matter of official report and is included in his service record." It is then concluded that he must reasonably expect "this record will be scrutinized by the convening authority to determine whether he should or should not mitigate the sentence." He may explain the " 'other side of the coin' " by submitting

244

a post-trial brief pursuant to Code, supra, Article 38, 10 USC § 838.

True it is that the imposition of non-judicial punishment forms a part of an enlisted marine's service record book. United States Marine Corps, Personnel Records and Accounting Manual, section 4017. However, I suggest that this does not solve the problem, for, according authenticity to the record of punishment, the accused is still entitled to an opportunity to explain the circumstances under which it was imposed. This right is peculiarly applicable to the Naval service and Marine Corps, for in these components, an individual is not entitled to demand trial by court-martial in lieu of a proceeding under Code, supra, Article 15, 10 USC § 815. Thus, there may well be circumstances surrounding the nonjudicial punishment which should be brought to the commander's attention.

Moreover, it is no answer to say that a post-trial brief may be filed under Code, supra, Article 38. We have not found that consideration pertinent in the disposition of cases involving other, extra-record materials. United States v Vara, supra; United States v Jackson, supra. To the contrary, we suggested in both instances that the practice of serving a copy of the staff judge advocate's review upon the accused be adopted by the services. Had we considered submission of a post-trial brief sufficient, certainly we would not have set forth in Vara, supra, the desirability of that procedure.

I suggest also that the requirement of a brief in cases such as this, where the accused was represented at the trial by a nonlawyer, imposes too heavy a burden upon untrained personnel who have little cognizance of the ethical duties owed a client. Post-trial briefs are rarely submitted in general courts-martial where the accused is represented by legally qualified counsel and I doubt that we will find as high an understanding of the review concept at the inferior court level. Thus, it seems to me both more practical and simpler to adhere without exception to the requirement that a copy of the review or its counterpart in the convening authority's action be submitted to the defendant.

A reading of our cases in this area will indicate that, contrary to the conclusion of my brothers, we have heretofore pointed our holdings toward the rule which I advocate. Judge Latimer, in United States v Jackson, supra, concluded that we held accused responsible only for those items which appeared in *the transcript examined by the defense*. This does not include the convening authority's action on the record, for that task is accomplished following its authentication by accused's attorney. In United States v Lanford, supra, we also stated, at page 381, that accused must be given a fair and reasonable opportunity to rebut or explain adverse information utilized by the convening authority. Contrary to the thought expressed in the principal opinion, we have never limited that statement of the law. Thus, in United States v Smith, supra, we did not reach the issue, for we determined that, assuming the existence of error, accused could not have been prejudiced in view of the convening authority's favorable action on the sentence. In United States v Barrow, 9 USCMA 343, 26 CMR 123, we specifically found that consideration of a prior juvenile conviction by the convening authority was so trifling that no prejudice resulted. Moreover, the *obiter dictum* quoted by my brothers from that case does not in any wise limit the *Lanford* doctrine. It merely sets forth that accused was fully aware of his juvenile misconduct and had made a complete explanation of it upon his entry into service. In short, Barrow simply had nothing to discuss with the convening authority, and the service of the review upon him would have been a useless act. This is hardly a sound reason for creating an invidious exception to a rule which meets the requirements of fairness and justice in a most practical manner and which has withstood the assaults of Government appellate counsel for almost six years.

My position with respect to the situation here presented is clear. I would adhere without exception to the requirement that the accused be affirmatively afforded an opportunity to rebut or ex-

plain any adverse matters considered by the convening authority which are not found in the transcript examined by counsel. United States v Lanford, supra; United States v Jackson, supra. I suggest that the services might practically meet this requirement by serving a copy of the convening authority's action upon the accused and affording him a reasonable opportunity to submit matter in explanation or rebuttal. In reaching the contrary result, I believe that my brothers make an inroad upon the rule which is founded neither upon precedent nor logic. I predict that it will create more problems in the area of competent representation by counsel than it will solve in the field of reviews and actions.

I would answer the certified question in the affirmative and, because of the reassessment of sentence, uphold the decision of the board of review.

