UNITED STATES, Appellant

v

JOHN H. SHOTTER, Private First Class,
U. S. Marine Corps, Appellee

12 USCMA 283, 30 CMR 283

No. 14,674

Decided April 14, 1961

*Lieutenant John W. Boult*, USNR, argued the cause for Appellant, United States.

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On May 2, 1960, the accused was charged with the offenses of housebreaking and larceny, in violation of Articles 130 and 121, Uniform Code of Military Justice, 10 USC §§ 930 and 921, respectively. Three days later, an investigating officer was appointed and, with the consent of a civilian lawyer employed by the accused, a pretrial hearing commenced on May 11, 1960. To accommodate defense counsel, it was not completed until May 14, 1960. In the interim, accused had been examined by a psychiatrist, who concluded he was mentally responsible at the time the offenses were committed. In his evaluation, however, the doctor included a statement that the accused had admitted participating as a passive partner in homosexual acts. The letter which contains this information is dated May 12, 1960, and is found in the allied papers. It was addressed to the legal officer of the 4th Marines, 1st Marine Brigade, Fleet Marine Force, but its use is not entirely fixed by the record. However, it does not appear to have been routed to the pretrial investigating officer as on May 14, 1960, that functionary completed his task and submitted his

report to the Commanding Officer of the 4th Marines. In that report, the investigating officer listed all statements considered by him and, significantly, the letter is not mentioned. So far as the record discloses, it first appears in correspondence dated May 16, 1960. On that date, the Commanding Officer of the 4th Marines forwarded his recommendation for trial by a general court-martial to the Commanding General, 1st Marine Brigade, who was the convening authority. The doctor's letter is listed as an enclosure thereto, separate and apart from the pretrial officer's report which, of course, was also submitted as an enclosure.

In his pretrial advice to the convening authority, the staff legal officer recommended that certain property mentioned in the charge sheet be deleted from the specification alleging larceny and that the case be referred for trial to a general court-martial. The convening authority so ordered and, after continuances at the request of the defense, the case was set for trial on August 22, 1960. Prior to that date, however, the accused, with the concurrence of his counsel, requested that consideration be given to

284

fixing a maximum sentence, provided he entered a plea of guilty. Included in this request was a suggested sentence of a bad-conduct discharge, confinement at hard labor for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. The convening authority considered the request favorably, the case was called for trial, and the accused pleaded guilty to both specifications. He was sentenced to dishonorable discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the grade of private.

When the record reached the convening authority after findings and sentence, it was forwarded to the next higher headquarters for post-trial advice by a staff legal officer for the reason that all qualified counsel at the lower level had participated in this or a closely allied case. In the letter of transmittal, the convening authority set out certain information, including a statement that the letter of the medical officer referring to the homosexual activities of the accused was not considered by him in determining whether the case should be referred to trial, for the reason that the alleged misconduct was not investigated at the pretrial hearing and he deemed it to be unsubstantiated. A qualified staff legal officer reviewed the record and recommended approval of the sentence with the proviso that the punitive separation be reduced to a bad-conduct discharge, as that would bring accused's punishment within the terms of the pretrial agreement. The record was then returned to the convening authority who followed the recommendation.

Thereafter, the appeal came on for hearing before a board of review in the office of The Judge Advocate General of the Navy, and it reversed both findings and sentence. The first reason assigned for the reversal was that the accused was not informed that his alleged homosexual acts were available for consideration by the pretrial investigating officer, the officer who recommended trial by general court-martial, and the officer who referred the case for trial to general court-martial. In addition, the board reasoned that the accused was prejudiced because he had not been afforded an opportunity to counter the asserted misconduct. The Judge Advocate General of the Navy thereupon certified the case to this Court to ascertain the propriety of the action of the board of review in setting aside both the findings and sentence.

Prior to touching on the merits, we believe it appropriate to make one or two comments which may aid in future cases. Documents should not be included in a record of trial unless they are competent and relevant to the issues involved. In the case at bar, the psychiatric examination may have been necessary, but the comments of the surgeon concerning acts of misconduct had no reason to be injected into the record. After the examination, there was no doubt about the mental responsibility or competency of the accused but, assuming other reviewing authorities who were required to take action on the record should be allowed the benefit of the expert's conclusion on sanity, there was no reason to pass on the offensive comments to them. Had the latter been omitted, the report would have been consistent with the presumption of sanity, further inquiry would not have been necessary, and no question of prejudice would have arisen.

Passing on to the merits of the controversy, we are convinced the board of review erred. There is a complete pretrial record identifying the witnesses and a summary of their examination and cross-examination, and the doctor is not named. The testimony considered by the pretrial investigating officer and its source is well identified by him, and there is no mention made of the subject matter of the letter. The pretrial hearing commenced before the letter was written, and it was not addressed to the investigating officer. Rather it was directed to the legal officer on the staff of the commander to whom

**285**

the Article 32 investigator submitted his report. Moreover, there is a showing that it was then routed directly up the chain of command, for it is listed by the commanding officer as a separate enclosure in his letter to the convening authority dated two days after the hearing had been completed. With the record in that posture and with relevant evidence before the investigating officer showing a probability that the accused had committed two serious felonies, it is fanciful to conclude the pretrial investigating officer was influenced in his recommendation by the document.

The same conclusion is compelled with regard to the Commanding Officer of the 4th Marines. With compelling evidence that accused had committed two crimes of this magnitude, there is little liklihood the questioned comments in the doctor's letter would influence him to suggest trial by general court-martial. Furthermore, it must be borne in mind that on May 5, 1960, a full week before the doctor wrote the letter setting forth the alleged homosexual misconduct, the commander of the 4th Marines directed a formal pretrial investigation into the charges against accused, and appointed the Article 32 officer. Obviously, therefore, it is not of great importance that the doctor's letter was before him when he made his recommendation to the convening authority on May 16th, for over ten days earlier he had given strong indications he deemed trial by general court-martial appropriate if the evidence substantiated the charges of housebreaking and larceny. Had he felt otherwise a formal Article 32 hearing would not have been necessary.

When the staff legal officer to the convening authority recommended trial by general court-martial, no reference was made to the questioned document. However, it is reasonably certain he knew of its contents. But that is not to say it influenced him or the convening authority in the choice of courts. Absent any showing to the contrary, a lawyer should be credited with sufficient judgment to separate unsworn, unsubstantiated, and hearsay evidence from that which is competent, particularly where, as here, it does not bear directly on the offenses alleged. Aside from that, this accused is charged with crimes for which he could have been sentenced to ten years' confinement, dishonorable discharge, total forfeitures, and reduction. The pretrial investigation established premeditated offenses and a deliberate effort to conceal the property stolen. There were few, if any, mitigating circumstances and, had the alleged misbehavior not been mentioned, there is no likelihood that the lawyer would have recommended a trial by special court-martial of charges alleging housebreaking and larceny. But, most important of all, the convening authority has discretion as to whether or not charges shall be referred for trial and regarding the forum to which they shall be sent. And here, long before any question had been raised about the effect of the psychiatrist's statements, the convening authority stated in a letter to higher headquarters— and we are reasonably certain that the letter was the handicraft of the staff legal officer—that he had not considered the information of the doctor in reaching a decision to refer the case to trial by court-martial, for the reason that it was not investigated by the Article 32 investigating officer and he considered it to be unsubstantiated. With the record affirmatively showing that the adverse information did not influence the convening authority and without any facts or circumstances to the contrary, we cannot subscribe to the conclusion that the trial might have been referred to a special court-martial had the document not been called to the attention of the convening authority and his legal advisor.

Obviously the doctor's comments could have no impact on the trial itself, for accused pleaded guilty and the court-martial was not apprised of the contents of his letter. That brings us to post-trial proceedings, and our next point of departure with the board of review is

286

that we find a total lack of prejudice at the reviewing level. Significantly, a staff legal officer entirely disassociated with the convening authority reviewed the record. He mentioned a number of matters in extenuation but made no reference to any misconduct apart from the two admitted offenses. In addition, he advised the convening authority of his discretion in approving an appropriate sentence. Cf. United States v Betts, 12 USCMA 214, 30 CMR 214. After receiving the post-trial review the same officer exercising general court-martial jurisdiction who referred the case to trial affirmed the findings and sentence. Prior to the time he considered the findings and sentence, he had rejected consideration of the misconduct because it was unsubstantiated, and consistency would require the same rejection on sentence. But, in addition, before the case was tried the accused had agreed to plead guilty to the two offenses of housebreaking and larceny with an understanding that his sentence would not exceed certain limits. The ceiling suggested by him, with the advice of his counsel, is a fair starting point for measuring the appropriateness of sentence. While the court-martial imposed a dishonorable discharge, it lessened the period of confinement from that agreeable to the defense. The court members had no access to the document and, as we have indicated, they could not have been influenced because they knew nothing about the asserted misconduct. Their sentence was entirely fair for, aside from the housebreaking, the theft consisted of taking some $635.00. The convening authority mitigated the dishonorable discharge to a bad-conduct discharge to conform with his agreement, and the accused ended up at that level with a sentence less than he considered fair and just. It would, therefore, appear beyond peradventure that the unfortunate comments did not sway the reviewing authority to affirm a sentence he considered inappropriate for the offenses of which accused was convicted.

Finally, we disagree with the board of review on its holding that the accused was prejudiced by not being afforded an opportunity to answer the allegations of the letter. First, as we have indicated, the information was not used and a denial could have made no difference in the ultimate outcome. Second, the record was available at all times to defense counsel, and we cannot assume he was uninformed of its contents. Last, if we consider the letter, it discloses that the information was volunteered by the accused himself and at no stage of the proceedings has he contended the statements, or any part thereof, are untrue. Therefore, there is no reason in law or fact to set aside his unquestioned plea of guilty and his sentence merely to afford him an opportunity to rebut information which appears to have been furnished by him and which, although he has had ample opportunity to do so, he does not ask for a chance to dispute.

Prior to oral argument in the instant case, appellate counsel for the Government filed a motion to amend its brief by incorporating certain affidavits. We withheld action on that motion pending hearing of the case. The conclusions we reach in this opinion render it unnecessary for us to take action on the motion.

For the foregoing reasons, we reverse the decision of the board of review and return the record for further action not inconsistent with this opinion.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.