UNITED STATES, Appellee

v

DAVID W. ROOP, Sergeant, U. S. Army, Appellant

16 USCMA 612, 37 CMR 232

No. 19,810

April 14, 1967

*Captain Anthony F. Cilluffo* argued the cause for Appellant, Accused.

612

With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Captain Frank J. Martin, Jr.*

*Captain Joel P. Schiff* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski, Lieutenant Colonel David Rarick,* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at San Isidro, Dominican Republic, charged with two specifications of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922. He pleaded not guilty but was found guilty as charged, except for a substitution in the value of the property stolen, under specification 1. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for three years, and reduction to the grade of Private (E–1). The convening authority approved the sentence. A board of review in the office of the Judge Advocate General of the Army affirmed the finding and so much of the sentence as provided for a dishonorable discharge, total forfeitures, confinement at hard labor for 18 months, and reduction to Private (E–1). This Court has granted review to consider two issues which will be hereafter stated.

With regard to the evidentiary aspects of this court-martial, it will suffice to relate that in October 1965 the appellant was a member of United States Forces then in the Dominican Republic. At this time he traveled by jeep to a mountain camp located near Santo Domingo in the performance of an assigned duty. There, while in the general area, he and his driver first entered the store of Juan Figuero y Jesus, a Dominican national. Having gained possession of the storekeeper's watch, under the guise of checking the correctness of his own timepiece, petitioner thereupon attempted to effect a trade by offering his own watch plus two pesos. Failing in this, he gave the other watch to his own driver—after threatening his victim with a weapon.

Departing this scene, the accused shortly thereafter arrived at the bar operated by Mr. Bienvenido Cabrera, also a Dominican. Of this threatened merchant, Roop demanded money. As a consequence, Cabrera surrendered 20 pesos, yet the accused took an additional 105 pesos as well as a bottle of rum.

As before, appellant ran from the store accompanied by his driver. Nonetheless, he was soon in custody—the robberies having been immediately reported. The missing watch was found hidden under the dashboard on the passenger side of the jeep.

Trial having ended, the record of the case was then forwarded to the convening authority for appropriate action.[1] At that time, retained civilian defense counsel submitted a lengthy brief supported in part by an accompanying affidavit of one Private Sloan.[2] This soldier therein declared that while a driver for the Judge Advocate General Section in the Dominican Republic, he had heard Captain Cole (trial counsel) tell another officer that accused and his driver were innocent "but to prove to the Dominican Republic, the United States was going to help them in every way," the captain was going to prove their guilt. Moreover, from the overheard conversation of other officers, Sloan believed innocent men were being given a "raw deal, just to save the governments [sic] face." Lastly, he asserted he had been questioned regarding the Article 32 investigation. He volunteered to be a witness if necessary.

In keeping with the requirements of

---

[1] See Articles 60 through 65, Uniform Code of Military Justice, 10 USC §§ 860 through 865.

[2] Article 38(c), Uniform Code of Military Justice, 10 USC § 838.

Article 61 of the Uniform Code of Military Justice, 10 USC § 861, the staff judge advocate, in turn, prepared a written review of the case. Having initially analyzed the appellate defense counsel's brief, he assessed the Sloan statement with these words:

"Mr. David attaches a copy of a statement given by Private Sloan of Headquarters and Headquarters Company, 82d Airborne Division. Sloan's statement, I have ascertained, is false. He gave it to Sergeant Roop when they were both inmates in the Post Stockade. (On 11 November 1965 Sloan pleaded guilty to two specifications of wrongfully appropriating a jeep and three specifications of disobedience)."

It is now contended by counsel for the appellant that the staff judge advocate has, by his comment, implied that Roop procured a false statement from Private Sloan for the purpose of perpetrating a fraud on judicial processes. Moreover, the record nowhere indicates the petitioner was afforded the opportunity to rebut such a charge. This failure, in the eyes of appellate defense, constitutes error prejudicial to their client's substantial rights. They rely upon United States v Bouie, 9 USCMA 228, 26 CMR 8; United States v Wilson, 9 USCMA 223, 26 CMR 3; United States v Payne, 9 USCMA 40, 25 CMR 302; United States v Vara, 8 USCMA 651, 25 CMR 155; and United States v Griffin, 8 USCMA 206, 24 CMR 16.

Appellate Government counsel dispute the applicability of the above-cited cases. They, in turn, believe the answer to the problem before us must be fashioned from a consideration of United States v Shotter, 12 USCMA 283, 30 CMR 283, and United States v Roberto, 31 CMR 349, petition denied, 12 USCMA 764, 31 CMR 314. Defense, of course, believe these two cases here inoperable.

Those cases relied upon above by the appellate defense, coupled with United States v Lanford, 6 USCMA 371, 20 CMR 87, announce the general rule that where a convening authority considers in mitigation adverse matters gathered from outside the record, the accused must be afforded an opportunity to rebut or explain. In each, the adverse matter there present consisted of either derogatory statements or evaluations by third parties regarding the accused, unbeknown to him.

In not every instance of error, however, does reversal necessarily follow. This conclusion is reflected in those cases where the reason for the rule has been satisfied. Thus, in United States v Sarlouis, 9 USCMA 148, 25 CMR 410, harm did not result from a lack of opportunity to rebut unfavorable evaluation statements when the staff judge advocate gave greater weight to more favorable matters. Clearly, both sides of the coin had been shown. In short, the convening authority had not been unilaterally influenced.

Similarly, in United States v Smith, 9 USCMA 145, 25 CMR 407, this Court found no prejudice even though the staff judge advocate's review mentioned previous convictions and contained an expression of unfavorable opinions. This result obtained for the reviewer minimized the prior crimes, emphasized Smith's youth, and then recommended rehabilitation. This was followed by the convening authority. Cf. United States v Morris, 9 USCMA 368, 26 CMR 148.

In United States v Taylor, 9 USCMA 34, 25 CMR 296, that accused was shown to have had a reputation for carrying straight razors. Yet, in the face of other recital concerning his background and personality, this Court was certain that the challenged material did not influence the convening authority's action.

So, too, was the same determination reached in United States v Williams, 9 USCMA 36, 25 CMR 298, and United States v Bugros, 9 USCMA 276, 26 CMR 56. In the former, Williams was implicated in barracks thievery, but these insinuations were deemed conjectural only. Other purported acts of misconduct were considered so minor in nature as to have had no measurable impact on the convening authority.

In the latter case, Bugros could not have been harmed, we reasoned, by the insertion of, in the staff judge advocate's review, without opportunity for accused to rebut, adverse information on his past life. He had supplied a personal history which would have precluded any exercise of clemency in his behalf. See also United States v Owens, 11 USCMA 240, 29 CMR 56; United States v Christopher, 13 USCMA 231, 32 CMR 231.

Turning to United States v Shotter, supra, cited by the Government, we find that prior to trial for housebreaking and larceny accused was given a psychiatric examination. The subsequent report included the statement that accused had admitted participating as a passive partner in homosexual acts. This information was later found among the allied papers. The board of review reversed the conviction, one of the reasons being that Shotter was not afforded the opportunity to rebut the asserted misconduct. When asked, by way of certificate, to ascertain the propriety of the board of review's action, we concluded contrary to the board of review holding; one reason being that the revelation in question was not only volunteered by Shotter himself, but at no time did he contend the statement untrue in whole or in part. This same rationale was applied at the board of review level in the case of United States v Roberto, supra, when included in the post-trial review was a "confession" never denied.

Before proceeding further, we once again say, as we have said many times in the past, that as a ▆▆▆▆▆■ matter of fairness and eventual expedience, the uninformed accused should be given an opportunity in each and every instance to rebut matters seemingly adverse to him as they appear in the staff judge advocate's review. The mere fact that upon appeal harm to the accused may be found nonexistent, in no sense lessens the obligation to see that he receives those benefits that are rightly his. Indeed, there is no reason to subject the accused to the burden of proceeding throughout the appellate chain to try the issue of prejudice, when the matter might be easily avoided by serving a copy of the review on him.

As for the problem at hand, scrutiny of past cases, individually and collectively, convinces us this ▆▆▆▆▆■ appellant has not been prejudicially harmed by the events which have here transpired. The questioned document is a defense instrument and has been utilized by civilian counsel to support his briefed arguments that (1) from the enumerated "contradictions, lies, and hesitations" accused should never have been convicted, and (2) "[t]he Political and Diplomatic climate in which Roop . . . [was] tried was not in the best interests of Military Justice."

How then can it be said accused must be afforded an opportunity to explain away the very instrument his defender has caused to be published? Moreover, he gains little by insisting it is not Sloan's statement that brings harm but rather the action taken by the staff judge advocate thereon. Surely, "by the exercise of a modicum of judgment," it must have been known that under such circumstances this document would come under the scrutiny of the staff judge advocate. United States v Jackson, 9 USCMA 298, 26 CMR 78.

In this regard, it is not enough to say the staff judge advocate's inquiry impliedly assigns the accused with having obtained a false statement. That this may be done in perfect innocence should be unquestioned. It is when an accused purposefully procures, *knowing the statement to be false,* that harmful implications come into being. That conclusion is not possible here. Civilian counsel, in using the statement, is most assuredly called upon to question his client's knowledge as to the statement's authenticity. We do not doubt he did so in this instance. This being certain, in the light of the facts of this case, there is nothing for the accused to rebut.

For that matter, the accused, at the board of review level, had ample opportunity to denounce or at least take issue with the staff judge advocate's

findings. Indeed, at no time has he followed such a course. Here, as in *Jackson*, "we ascertain no reasonable possibility, let alone probability, that he would refute evidence which he himself furnished and which he has already declined to dispute on several propitious occasions."

It must be remembered that Roop testified and, in so doing, left uncertain only the reason for his possessing the watch—which he attributes to the driver's inadvertence—and his own presence in the bar operated by Mr. Cabrera. Coupled with prosecution evidence is his testimony that totally fails to support either the contention trial counsel categorically knew the accused to be innocent or that he was being given a "raw deal." Accordingly, we resolve this issue against the accused.

The remaining issue questions the correctness of an instruction given by the law officer that "[a] reasonable doubt may arise from the ■ insufficiency of circumstantial evidence, and such insufficiency may be with respect either to the evidence of the circumstances themselves or to the strength of the inference drawn from them."

This same instruction was the subject of consideration in the recently decided case of United States v Kirby, 16 USCMA 517, 37 CMR 137. We there said that it neither added nor detracted from the general rule; rather, it was but a reminder of the rule. Here, as there, the instruction given as a whole "correctly conveys the concept of 'reasonable doubt to the jury.'" Therefore, we find no error.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.