UNITED STATES, Appellee

v

RANDOLPH S. SCOTT, Specialist Four, U. S. Army, Appellant

20 USCMA 264, 43 CMR 104

*Captain Gary W. Allman* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain David S. Cooper, Captain Thomas R. Maher*, and *Captain William W. Rittenhouse.*

*Captain Mark Rosenberg* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger, Captain William R. Steinmetz*, and *Captain Benjamin G. Porter.*

## Opinion of the Court

DARDEN, Judge:

In this case the Court is asked whether the staff judge advocate erred in not forwarding to the appellant for rebuttal a copy of the clemency portion of the post-trial review containing adverse information.

Contrary to his plea, Scott was convicted by a general court-martial of lifting up a loaded M-16 rifle against his superior officer, a violation of Article 90, Uniform Code of Military Justice, 10 USC § 890. His sentence included a dishonorable discharge, total forfeitures, reduction in grade, and confinement at hard labor for eight years, reduced to five years by the United States Army Court of Military Review.

Following the appellant's conviction, the staff judge advocate reviewed the record of trial, determining that guilt was established beyond a reasonable doubt, that the findings were correct in fact and law, and that the sentence was also legally correct. Clemency was then considered. The appellant's civilian background and his military record were set out in detail. Scott's desires for an honorable discharge and to remain in the Army to complete his service obligation were also made known. The three paragraphs set out below followed:

"d. Discussion. (1) In the post-trial interview, the accused indicated that he desired restoration to duty, and that if given a new chance, he would earn an honorable discharge. He impressed the interviewer with his sincerity and willingness to return to the field. As a result of this interview, the accused was not placed in post-trial confinement, and before being reassigned to a new unit, he was permitted to take his R & R.

"(2) He absented himself without authority on 23 June 1969, when he failed to appear for his R & R flight, and remained unlocated until on or about 12 August 1969. It has subsequently been discovered that from 29 July 1969 until 10 August 1969 he was under military control in a military hospital in DaNang, RVN, being treated for an abscessed hip. He voluntarily returned to military control at the Americal Division in Chu Lai on 12 August 1969, but immediately thereafter commenced another unauthorized absence. He remained so absent until 1 September 1969 when he was apprehended, after a struggle in which he cut one of the apprehending personnel with a knife.

"(3) The substance of the material contained in subparagraph 6d(2), above, was presented to the accused by the undersigned in an interview following his apprehension. He was advised that he could offer matters in rebuttal or explanation, but he declined to do so. Giving full consideration to all pertinent matters, the exercise of clemency is not deemed to be warranted."

**265**

In a sworn statement dated May 26, 1970, at Fort Leavenworth, Kansas, Scott declared that after his apprehension on September 1, 1969, he was visited by "an officer from the office of the Staff Judge Advocate." Asked if he had anything to say, Scott answered in the negative. Nothing was said about a knifing, and the appellant made no comment in this regard, for he had cut no one. He had not seen a copy of the staff judge advocate's review before the action of the convening authority on September 23, 1969. He first saw this report at the disciplinary barracks in the latter part of October when he received a copy of the record of trial.

In rebuttal, an affidavit of the staff judge advocate was taken on June 22, 1970. This officer related that he was informed by the military police of the "affray and the knife cut" after the appellant's apprehension. With this information and with knowledge of Scott's unauthorized absence, he concluded that he should consider recommending approval of the court's sentence rather than restoration to duty as had originally been planned. At the time, Scott was restrained in a detention cell at the office of the Division Provost Marshal. The staff judge advocate went to the facility on the the second or third of September, identified himself to Scott, and informed the latter that his record of trial was expected back from the military judge in a couple of weeks and that the Commanding General would then take his action. He advised Scott of Scott's forthcoming transfer to the Long Binh Stockade pending the convening authority's action. Asserting that it was his responsibility to make a recommendation concerning the General's action, he informed Scott that he would necessarily consider his two unauthorized absences as well as the allegation that he had used a knife while resisting apprehension. The convening authority was aware of these allegations, Scott was told. The staff judge advocate then asked the prisoner if he wished to relate his version of what had happened after his trial or why it had happened. Scott replied, "something to

the effect of '[j]ust go ahead and put me in a coffin.'" The inquiry was repeated but the replies were unresponsive. Scott was shipped to the USARV Installation Stockade shortly after this attempted interview and apparently departed Vietnam about September 25, 1969.

For the first time on appeal the appellant now contends that he was not afforded the opportunity to respond to the staff judge advocate's comments about the unauthorized absences and his having cut one of his apprehenders, since they were never "shown" to the appellant. The proper procedure, say counsel, is that outlined in United States v Vara, 8 USCMA 651, 654, 25 CMR 155 (1958). This Court declared in that opinion:

". . . While rules of procedure for military courts are prescribed by the President, there is a void in this field which should be filled. The Services could correct the deficiency by appropriate regulations, while the only method available to us is to set aside a sentence when the accused has been prejudiced. Therefore, to improve the administration of military justice, to avoid unnecessary reversals, and to bring some semblance of orderly procedure out of what appears to be a rather obscure method of operation, we suggest that a practice of serving a copy of the review, or those parts which contain matters of fact adverse to an accused, on the accused or his counsel sometime prior to action by the convening authority be adopted. The time of service should be early enough to permit a reply thereto if accused is so disposed. If that procedure is used, an accused will be afforded a fair opportunity to answer new matters which are prejudicial to him and to present information which might be helpful to his cause. Furthermore, the convening authority and higher reviewing authorities who have power to modify sentences may be furnished with a more comprehensive and impartial base for determining the appropriateness of sentence. Finally, this

Court will not be required to speculate on accused's familiarity with the facts being used against him."

Since *Vara*, the guidance has been restated in one form or another several times. United States v Smith, 9 USCMA 145, 25 CMR 407 (1958); United States v Jackson, 9 USCMA 298, 26 CMR 78 (1958); United States v Clark, 18 USCMA 458, 40 CMR 170 (1969).

If the opportunity to reply to adverse comment is not given, each case must be weighed for prejudicial effect. United States v Roop, 16 USCMA 612, 37 CMR 232 (1967), and the cases cited in that opinion. Here, however, the primary question is not the existence of prejudice but the adequacy of the staff judge advocate's action.

The Manual for Courts-Martial, United States, 1969 (effective January 1, 1969), operative at the time of this trial (see also the Revised edition), provides that an accused must be given the opportunity to rebut adverse matter from outside the record:

". . . [U]nless he supplied the information himself *or may. be charged with knowledge that the information might be used against him,* as when it appears in a record of nonjudicial punishment." [Paragraph 85*b*.] [Emphasis supplied.]

Regardless of whether this was required under the terms of this Manual provision, a chance for rebuttal was in fact offered the accused. The officer involved noted in his review that he had initially been favorably impressed by Scott, so much so that instead of being placed in post-trial confinement, the appellant was permitted to take his Rest and Recuperation leave before being reassigned to a new unit. Scott's later conduct, inconsistent with his expressed desire to return to the field, obviously required explanation if the staff judge advocate's recommendation was to remain unchanged. Although the second personal meeting between the two may have resulted from a shortage of time and the impending transfer of the appellant, another personal confrontation could have been more advantageous to the appellant

than would an opportunity to present his explanation in writing, considering the favorable impression the appellant had created during his first interview. Cf. United States v Lanford, 6 USCMA 371, 20 CMR 87 (1955).

In his affidavit, Scott admits that he was personally interviewed and asked to explain his unauthorized absences. It would have been unreasonable for him to suppose that these events; so closely related in time and place, would not be considered in an assessment of his rehabilitation potential. United States v Jackson and United States v Roop, supra. Scott only disputes that he was questioned about his use of a knife. A confrontation reported by the staff judge advocate in his review gave the appellant the opportunity to explain or rebut. Because it achieves what was intended by *Vara*, the procedure employed in this case satisfied the purpose of the *Vara* rule. See United States v Jackson, supra, Chief Judge Quinn concurring in the result.

Failure to mention the asserted use of a knife could have had little effect on the staff judge advocate's ultimate decision after Scott refused to supply any explanation whatever regarding his conduct during the period in question. United States v Williams, 9 USCMA 36, 25 CMR 298 (1958); United States v Bugros, 9 USCMA 276, 26 CMR 56 (1958); and United States v Taylor, 9 USCMA 34, 25 CMR 296 (1958). Accordingly, we affirm the decision of the United States Army Court of Military Review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

In his post-trial review for the convening authority (paragraph 6d(2)), the staff judge advocate alleged that subsequent to the accused's conviction of the charged offense, the accused had again violated the Code by being absent without leave on two occasions and by cutting with a knife one of the personnel participating in his apprehension for the second unauthorized absence (Articles 86 and

**267**

128, Uniform Code of Military Justice, 10 USC §§ 886 and 928). He offered no proof that these offenses had occurred and simply stated:

"The substance of the material contained in subparagraph 6d(2), above, was presented to the accused by the undersigned in an interview following his apprehension. He was advised that he could offer matters in rebuttal or explanation, but he declined to do so. Giving full consideration to all pertinent matters, the exercise of clemency is not deemed to be warranted."

It is undisputed that the accused was not shown a copy of the staff judge advocate's review prior to the action of the convening authority. In post-trial affidavits, the accused denied he had cut anyone with a knife and the staff judge advocate related that he was informed by the military police of the affray and the knife cut after the accused's apprehension.

Paragraph 85b, Manual for Courts-Martial, United States, 1969 (effective January 1, 1969),[1] operative at the time of this trial, provides:

". . . Matters outside the record may be included in the review to assist the convening authority in determining his action on the sentence. However, if an adverse matter from outside the record is included, the accused must be afforded an opportunity to rebut or explain the matter, unless he supplied the information himself or may be charged with knowledge that the information might be used against him, as when it appears in a record of nonjudicial punishment."

In United States v Vara, 8 USCMA 651, 654, 25 CMR 155 (1958), this Court unanimously declared:

". . . While rules of procedure for military courts are prescribed by the President, there is a void in this field which should be filled. The Services could correct the deficiency by ap-

propriate regulations, while the only method available to us is to set aside a sentence when the accused has been prejudiced. Therefore, to improve the administration of military justice, to avoid unnecessary reversals, and to bring some semblance of orderly procedure out of what appears to be a rather obscure method of operation, we suggest that a practice of serving a copy of the review, or those parts which contain matters of fact adverse to an accused, on the accused or his counsel sometime prior to action by the convening authority be adopted. The time of service should be early enough to permit a reply thereto if accused is so disposed. If that procedure is used, an accused will be afforded a fair opportunity to answer new matters which are prejudicial to him and to present information which might be helpful to his cause. Furthermore, the convening authority and higher reviewing authorities who have power to modify sentences may be furnished with a more comprehensive and impartial base for determining the appropriateness of sentence. Finally, this Court will not be required to speculate on accused's familiarity with the facts being used against him."

See also United States v Smith, 9 USCMA 145, 25 CMR 407 (1958); United States v Jackson, 9 USCMA 298, 26 CMR 78 (1958); United States v Roop, 16 USCMA 612, 37 CMR 232 (1967); United States v Clark, 18 USCMA 458, 40 CMR 170 (1969).

My brothers affirm this case on the ground that since the staff judge advocate personally interviewed the accused and asked him to explain his post-trial conduct, the accused was thereby given the opportunity to explain or rebut these delicts, and, thus, the purpose of the Vara rule was satisfied.

We have, indeed, in some cases, held that the accused was not prejudiced by the inclusion of adverse material from outside the record. See United States v Roop, supra, and cases cited. This case, however, presents an entirely different posture for here we are dealing with alleged violations of the

---

[1] The Revised edition of the 1969 Manual contains the same provisions.

Code, which were not a part of the record nor were they voluntarily disclosed by the accused himself. The accused had an absolute right to decline to discuss these matters and, in fact, the staff judge advocate was precluded from asking him any questions about them without first informing the accused of his right to silence under Article 31, Code, supra, 10 USC § 831. In addition, since this was an in-custody interview of an accused suspected of an offense under the Code, he should also have been advised of his right to counsel. Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966); United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). None of these warnings were given. Since the accused's reliance on his right to silence may not be considered as evidence of guilt (see United States v Johnson, 18 USCMA 241, 39 CMR 241 (1969), and cases cited), the inclusion in the post-trial review of the fact (unproved) of codal violations and accused's reliance on his right to silence, was, under these circumstances, obviously prejudicial. United States v Vara, supra.

I would reverse the decision of the Court of Military Review and direct that a new post-trial review may be ordered.