UNITED STATES

v.

**Airman First Class James N. JONES, Jr., FR 414–80–8359 Headquarters, 3345th Air Base Group Chanute Technical Training Center (ATC).**

**ACM 21920.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 July 1975.

Decided 30 Dec. 1975.

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Major John A. Cutts III. Captain Doyle D. Sanders filed a brief on behalf of the accused. Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

## DECISION

LeTARTE, Chief Judge:

Contrary to his pleas, the accused was convicted of three specifications alleging wrongful sales of marijuana, in violation of Article 134, 10 U.S.C. § 934, Uniform Code of Military Justice. He was sentenced to be discharged from the service with a bad conduct discharge, to be confined at hard labor for one year, to forfeit $200.00 per month for one year and to be reduced in grade to airman basic. The convening authority approved the sentence as adjudged and designated the United States Disciplinary Barracks, Fort Leavenworth, Kansas, as the place of confinement.

Though many errors have been assigned for our consideration, we find it appropriate to discuss only one of these wherein appellate defense counsel contend:

THE CONVENING AUTHORITY AND HIS STAFF JUDGE ADVOCATE WERE DISQUALIFIED FROM REVIEWING AND ACTING ON THIS CASE.

We agree with this contention. The facts and circumstances pertinent to our decision have been gleaned from the post-trial documents appended to the record of proceedings and from several affidavits attached to the appellate briefs.

The staff judge advocate's post-trial review was completed on 18 August 1975, and, with the exception of the reduction provision, the staff judge advocate recommended that the sentence be approved as adjudged and that the 3320th Retraining Group, Lowry Air Force Base, Colorado, be designated as the place of confinement with a provision for immediate entry into the retraining program. On 26 August 1975, the staff judge advocate presented the record of trial and his review to the convening authority who, "[a]fter carefully studying the record and discussing the case," stated his inclination to confine the accused at the United States Disciplinary Barracks but indicated "he would like to consider the matter further." According to the convening authority, he had "tentatively decided" to confine the accused at the United States Disciplinary Barracks. However, he "had the idea that if Airman Jones was as contrite as his request for clemency indicated, he might be willing to name the sources for his marihuana purchases." The convening authority also believed that he should talk with the accused "personally prior to making a final decision in his case."

The next day, the accused was summoned to the convening authority's office and interviewed in the presence of the staff judge advocate and the local OSI (Office of Special Investigations) Detachment Commander. Prior to the interview, the accused was informed that he would not be advised of his rights under Article 31, Code, supra, because any incriminating information he divulged would not be used against him, and that the purpose of the interview was to give him an opportunity to provide infor-

mation which "could have some effect on where the sentence was to be served."

The affidavits submitted by the accused and the other parties to the interview vary somewhat concerning the topics thereafter discussed. However, it is apparent that the accused was questioned by the detachment commander concerning his source of amphetamines seized in his off-base apartment and that that officer expressed his disbelief of the accused's subsequent denial that the amphetamines were his.[1] It is also apparent that admissions were elicited from the accused that he had purchased marijuana in February 1975 from "Sgt Joe Jones" and that he had purchased approximately one-half pound of marijuana from "Willie Chapman" for his personal use but not for sale.[2] At the conclusion of the interview, the convening authority concluded that the accused "had revealed nothing . . . that was illuminating on the subject of drug traffic" and advised the accused that he did not believe he "had been completely open and candid."

▆ There is no prohibition in military law against a staff judge advocate's or convening authority's genuine post-trial efforts to obtain mitigating information from an accused by means of a personal interview, and such procedure may properly include, under appropriate circumstances, affording an accused the opportunity to explain the offenses of which he stands convicted or to rebut adverse matters in the post-trial review. *United States v. Hurt,* 9 U.S.C.M.A. 735, 27 C.M.R. 3, 53 (1958); *United States v. Scott,* 20 U.S.C.M.A. 264, 43 C.M.R. 104 (1971). Nevertheless, since an accused is entitled to a fair and impartial review of his case,[3] such an interview cannot be conducted for the purpose of obtaining information relative to significant legal and factual issues raised at trial or to other matters that might influence the convening authority's action with respect to the court's findings.

▆ In the instant case, we have no hesitation in finding that the interview in question exceeded the limits of propriety and was prejudicial to the accused's substantial rights. Faced with confinement at the United States Disciplinary Barracks, rather than at the Retraining Group as he had requested, and without having received a proper warning as to his right against self-incrimination, the accused was compelled to discuss not only the crimes of which he had been convicted but also uncharged offenses and those that had been withdrawn by the convening authority after arraignment for lack of evidence. The convening authority's purpose in conducting the interview, to obtain information concerning the drug traffic on his installation, is laudable, but it does not justify the manner in which the proceeding was conducted. Furthermore, the information sought from the accused was not merely pertinent to his place of confinement, as the staff judge advocate and convening authority contend. At the time of the interview, the convening authority had not yet formally approved the findings and sentence. Therefore, there is a real danger that the accused's admissions during the interview as well as the detachment commander's expressions of opinion concerning the accused's lack of credibility,

---

1. The accused had been arraigned on a charge alleging his wrongful possession of these amphetamines, but following the military judge's ruling that this evidence had been unlawfully seized, the convening authority withdrew this charge.

2. Apparently, some of the marijuana purchased from Chapman was the same contraband later transferred by the accused to a Government informer, and these transactions constituted the basis of the three marijuana sale offenses of which the accused was convicted. At trial, however, the accused denied the first offense and introduced evidence tending to establish an alibi defense thereto. Furthermore, although he admitted transferring marijuana to the informer on two occasions, the accused insisted that the transfers were not sales. He explained that the marijuana was "Mexican", intended for his own use, and that he had given some of it to the informer in exchange for his promise to resupply the accused with "some Jamaican."

3. See, *United States v. Hardy,* 11 U.S.C.M.A. 521, 29 C.M.R. 337 (1960); *United States v. Martinez,* 11 U.S.C.M.A. 224, 29 C.M.R. 40 (1960); *United States v. Gordon,* 1 U.S.C.M.A. 255, 2 C.M.R. 161 (1952); *United States v. Thompson,* 37 C.M.R. 915 (A.F.B.R.1967).

may well have influenced the convening authority in deciding the issues raised at trial and in approving a sentence in excess of that recommended by his staff judge advocate.

If the convening authority had already decided to approve the court's findings and sentence, as his affidavit implies, he could have taken this action before interviewing the accused, and he could have designated the United States Disciplinary Barracks as the place of confinement. Thereafter, following a properly conducted interview, had he decided that the accused was deserving of confinement at the Retraining Group, he could have changed the place of confinement simply by publishing a special order to that effect. *United States v. Kearney*, 46 C.M.R. 1279 (1973), pet. denied, 46 C.M.R. 1323 (1973). Such procedure would at least have eliminated any possible contention that his action was premised in part upon information improperly gleaned from outside the record of trial and in contravention of the accused's rights against self-incrimination. As the record now stands, we cannot reach a contrary conclusion with certainty.

For the reasons stated, we find that the convening authority was disqualified from acting upon the accused's record of trial. Accordingly, the record is returned to The Judge Advocate General, United States Air Force, for referral to a different convening authority for a new review and action.

EARLY and FORAY, Judges, concur.