**UNITED STATES, Appellee,**

v.

**Bruce E. MOLES, Lance Corporal U. S. Marine Corps, Appellant.**

No. 37,526.

NCM 78 1665.

U. S. Court of Military Appeals.

Jan. 12, 1981.

For Appellant: *Lieutenant Earl B. Taylor,* JAGC, USNR (argued); *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN, *Lieutenant Commander P. B. Haskel,* JAGC, USN (on brief).

For Appellee: *Captain Craig L. Kemmerer,* USMCR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN, *Captain John P. Hertel,* USMC (on brief).

*Opinion of the Court*

FLETCHER, Judge:

On July 26, 1978, the appellant at his special court–martial, 7 M.J. 604, pleaded guilty to possession of phencyclidine, in violation of service regulations. Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, and para. 1151.2, United States Navy Regulations (26 February 1973). In mitigation of his sentence, the appellant offered testimony from his squad leader that he did an excellent job and that he should be returned to his unit. A second defense witness corroborated this testimony. The appellant also made an unsworn statement concerning his rehabilitation and his desire to avoid a bad–conduct discharge and to be returned to his unit. The military judge sentenced him to a bad–conduct discharge, three months' confinement at hard labor, forfeitures and reduction to E–1. However, the military judge also recommended that the bad–conduct discharge and confinement be suspended in light of appellant's good performance over the last ten months and the nine–month delay it took in bringing him to trial.

The appellant was confined immediately after his trial at the Camp Pendleton Correctional Facility. One week later, on August 2, 1978, he filled out, with the help of a technical advisor from the confinement center, NAVSO 5815/3 (1–73).[1] This government form is entitled "Waiver of Restoration" but also includes a request for execution of discharge awarded by special court–martial. In this form the appellant made the following statement (emphasis supplied):

TO BEGIN WITH I BEEN IN THE CORP. 3 YEARS 6 MONTHS HAD 1 OFFICE HOUR 1ST YEAR FOR A LITTLE DOPE COST ME $200 & 1 RANK FROM L/CPL TO PFC 2½ YEARS LATER WITHOUT ANY OFFICE HOURS GOT SET UP BY A MAN THAT WAS JEALOUS OF ME WHO WAS SUPPOSED TO BE A FRIEND. BUT HE TURNED ME IN AFTER I GAVE HIM WHAT HE WANTED & HE STILL ENDED UP KEEPEN [SIC] WHAT I GAVE HIM 9 MONTHS LATER. THEY GAVE ME A COURT MARTIAL & AWARDED ME FROM A L/CPL TO PVT, $300 FINE 90 DAYS & A BCD AFTER I REQUESTED. THEY COULD DO ANYTHING THEY WANT TO ME. *BUT I DIDNT WANT A BCD NO THEY AWARDED IT TO ME & THE CAMANDING [SIC] OFFICER OF 5TH MARINES APPROVED IT. SO I DONT WANT ANYTHING BUT WHAT THEY WANT TO GIVE ME.* I HAVE PLENTY OF OTHER THINGS TO TAKE CARE OF THEN [SIC] WASTE MY TIME WITH THE MARINE CORPS. IV WASTED ENOUGH WITH IT ALREADY & THIS IS MY CHANCE TO GET OUT ON A DISCHARGE & A BAD ONE AT THAT & THAT [SIC] WHAT I WANT & I DONT WANT TO GO BACK TO DUTY NO WAY I WANT OUT OF THAT UNIT & OFF THAT BASE AWAITING FOR MY B.C.D.

There is no indication in the record of trial that the appellant consulted with his trial defense counsel prior to filling out and signing this form, nor is there any indication that appellant properly waived the advice of counsel at this time.

On August 17, 1978, the Commanding Officer of the 1st Battalion, 5th Marines, 1st Marine Division (REIN) FMF, who was the special court–martial convening authority in this case, approved the sentence as

---

1. According to a Privacy Act Statement which was signed by the appellant along with NAVSO 5815/3 (1–73), this information was requested from him as authorized by Title 10, United States Code, sections 874(a) and 952–954. These federal statutes contain the authorization for a Service Secretary to establish a system for administering his clemency and parole powers. This Privacy Act Statement also indicated that this information would become a part of his corrections record and official naval personnel could refer to this information "in conjunction with the initial and any periodic review of [his] eligibility for clemency or parole." Due to our resolution of this case, we find it unnecessary to decide whether the use of this information by the staff judge advocate and any reviewing authority violates the provisions of the Privacy Act, 5 U.S.C. § 552a.

adjudged. *See* Article 60, UCMJ, 10 U.S.C. § 860. The record was then forwarded to the officer exercising general court–martial jurisdiction in this case. *See* Article 65(b), UCMJ, 10 U.S.C. § 865(b). He in turn referred the record to his staff judge advocate. *See* Article 61, UCMJ, 10 U.S.C. § 861.

The staff judge advocate noted in his review that the appellant "executed a waiver of restoration to duty and a request for immediate execution of his . . . discharge." Based upon consideration of the matters stated in his review, "including the military judge's [suspension] recommendation," he "recommended" on September 19, 1978, "that the sentence as approved by the convening authority be approved." On September 25, the Commanding Officer, 1st Marine Division (REIN), FMF, who was the officer exercising general court–martial jurisdiction, approved the sentence as adjudged. *See* Article 65(b), *supra*. No portion of the sentence was suspended as recommended by the military judge.

The issue granted for review by this Court is:

WHETHER THE NAVY COURT OF MILITARY REVIEW WAS CORRECT IN HOLDING AN UNCOUNSELED POSTTRIAL INTERVIEW EXEMPT FROM THE REQUIREMENTS OF *UNITED STATES V. HILL*, 4 M.J. 33 (CMA 1977), DESPITE THE USE BY THE STAFF JUDGE ADVOCATE OF THE APPELLANT'S STATEMENTS TO DISCOUNT THE MILITARY JUDGE'S CLEMENCY RECOMMENDATIONS?

The Navy Court of Military Review, in affirming this sentence, stated generally that information contained in clemency and parole proceedings are matters which may be appropriately considered by convening and supervisory authorities in taking their actions on sentence. It did so on the basis of paragraph 85*b*, Manual for Courts–Mar-

tial, United States, 1969 (Revised edition).[2] In addition, the opinion implies that it is proper for a staff judge advocate to normally include such information from outside the record in his post–trial review in order to assist such reviewing authorities.[3]

■ Without deciding the correctness of either of the above statements, a basic question remains as to whether the particular post–trial requests of the appellant were properly included by the staff judge advocate in his review and considered by these reviewing authorities. There is no doubt in our minds that even under paragraph 85*b*, *Manual, supra*, a staff judge advocate may not provide a reviewing authority with post–trial information taken from an obviously misinformed convicted service member or solicited from him in clear violation of service regulations. Such information is clearly irrelevant to the sentencing decision because it is not a reliable or correct basis as a matter of law and fact to approve a sentence under Article 64, UCMJ, 10 U.S.C. § 864. *See* 8A Moore's Federal Practice–Criminal Rules, §§ 32.03[4] and 32.04[1]. With this principle in mind, we now turn to the post–trial matters considered in the appellant's case.

The waiver of restoration to duty and request for discharge as awarded by court–martial is accomplished on a regulatory form devised by the Secretary of the Navy. *See* paras. 7 and 8, SECNAVINST 5815.3C (August 31, 1973). It is directly concerned with the military accused's right to seek from this official the opportunity to return to duty and the remission or suspension of any part or amount of the unexecuted portion of his sentence. *See* Article 74, UCMJ, 10 U.S.C. § 874. Navy Regulations refer to such a reduction of sentence as "residual clemency exercised by the Secretary of the Navy." *See* para. 3*a*, SECNAVINST 5815.-3C.

---

2. Due to our resolution of this case on other grounds, we need not decide whether a reviewing authority may consider such matters in his action on sentence. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *see also* 18 U.S.C. 3577.

3. *See* my opinions in *United States v. Hill*, 4 M.J. 33, 39 n.26 (C.M.A.1977), *United States v. Morrison*, 3 M.J. 408, 410 n.5 (C.M.A.1977) (Fletcher, C. J., concurring in the result).

Article 74 establishes no particular procedure for the exercise of this clemency power by a Service Secretary. The Secretary of the Navy has instituted the Naval Clemency and Parole Board to implement his policy in these matters. *See* paras. 5 and 6, SECNAVINST 5815.3C. Where a service member's sentence includes an unsuspended punitive discharge without confinement, a waiver of restoration may not be submitted until "receipt of the action of the officer exercising general court–martial jurisdiction." *See* para. 7a, SECNAVINST 5815.3C. However, as in appellant's case, where confinement is included in the sentence, such a request must be submitted "[a]t least 60 days prior to scheduled release from confinement." *See* para. 7b SECNAVINST 5815.3C. Since appellant was incarcerated on July 26, 1978, and his minimum scheduled release date was October 10, 1978, there was no apparent[4] violation of service regulations in the timeliness of his signing of the waiver of restoration on August 2, 1978.

It must be noted, however, that his waiver of restoration form also contains a concomitant request for execution of discharge as awarded by the appellant's special court–martial. This request further evidences the service member's desire not to seek clemency from the Secretary of the Navy. *See* para. 9b, SECNAVINST 5815.3C. The appellant indicated on this form that he requested his adjudged discharge be executed. The staff judge advocate, however, noted in his post–trial review that appellant requested *immediate* execution of the discharge. This type of request concerns the convicted service member's right to seek immediate release from the service. Navy JAGMAN section 0135. Since the reviewing authority had only this advice before him, we must accept this imprecise characterization of the

appellant's post–trial request. Navy regulations supplementing the Manual for Courts–Martial state that this particular type of request may be submitted by an accused only after completion of the confinement portion of his sentence and after the Navy Court of Military Review has affirmed his sentence. *See* Navy JAGMAN, section 0135a. Moreover, such a request for immediate execution of discharge may not be approved by the officer exercising general court–martial jurisdiction until "the accused has consulted counsel of his own choice." *See* para. 0135b(5), Navy JAGMAN. Neither of the above conditions was met in the present case. At the very least, the staff judge advocate's use of the appellant's request for immediate discharge in this manner and at this time must be considered premature and in violation of service regulations.

These violations of service regulations must also be considered prejudicial to the appellant in the sentence review of his case. In his statement contained on this government form, the appellant noted his belief that the Commanding Officer of the 5th Marines had already approved his adjudged bad–conduct discharge. He cited this fact as a major reason why, contrary to his earlier statements at the court–martial, he now wished to be discharged from the service rather than be restored to duty. However, this statement was signed on August 2, 1978, fifteen days before any reviewing authority so acted. It is unlikely that a competent lawyer advising the appellant as required by the above regulations would allow him to labor under this misapprehension. In addition, the Government in its brief before the Court of Military Review cited this statement to demonstrate that the appellant had suffered no prejudice

---

4. The use of the word "residual" in this context by the Secretary of the Navy indicates that his exercise of this clemency power is intended to occur after the action of the normal reviewing authorities. In fact, service regulations indicate that this is his policy unless the sentence to confinement will be served without an opportunity for his action. Accordingly, early submission of such a request is intended for the

service member's benefit and not for his detriment. In any event, there is no authorization in the Code or regulations for use of this information against a convicted service member's interest in a convening authority's action under Article 61, Uniform Code of Military Justice, 10 U.S.C. § 861, or a supervisory authority's under Article 65(b), UCMJ, 10 U.S.C. § 865(b).

in the inclusion of these requests in the post–trial review. If these service regulations were followed, this particular request would not have been before the lower court at the time it reviewed and affirmed this sentence.

The next question is whether it was nonetheless proper for the staff judge advocate to include, and the reviewing authorities[5] to consider, these post–trial requests so obtained from the appellant. *Cf. United States v. Hill,* 4 M.J. 33 (C.M.A.1977); *United States v. Goode,* 1 M.J. 3 (C.M.A.1975). The Government in its brief asserts that all matters material and relevant[6] to sentencing may be considered by reviewing authorities so long as the accused is given an opportunity to explain or rebut any adverse matters being considered. *See United States v. Lanford,* 6 U.S.C.M.A. 371, 375–76, 20 C.M.R. 87, 91–92 (1955); *United States v. Coulter,* 3 U.S.C.M.A. 657, 664, 14 C.M.R. 75, 82 (1954) (Latimer, J., dissenting). Our case law is not so broad.

■ In *United States v. Hill, supra,* this Court said that it was reversible error for the staff judge advocate to include in his post–trial review adverse matters which he elicited from an accused during a post–trial interview where the latter was denied assistance of counsel. In that case, the presence of counsel was found necessary in light of our decisions in *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977), and *United States v. Goode, supra.* In appellant's case, the opportunity to consult with counsel is also required by service regulations prior to his seeking immediate execution of his discharge. *See United States v. Hill, supra,* at 49 n.1, (Cook, J., dissenting). Moreover, here the appellant was obviously misinformed or not properly advised as to the status of his case, the acknowledged basis of both his post–trial requests. We believe

these matters also should not have been included by the staff judge advocate in his post–trial review despite the appellant's right of rebuttal. *United States v. Hill, supra.*

The final issue in this case is whether the failure of defense counsel to challenge the inclusion of these matters in the post–trial review waives this prejudicial error. *See United States v. Goode, supra* at 6.

In *United States v. Simpson,* 4 M.J. 46 (A.C.M.R.1976), trial defense counsel made known his objection to the post–trial interview of his client in his post–trial response letter required by *United States v. Goode, supra. See United States v. Hill, supra* at 35 n.8. Here defense counsel took no such action. However, in appellant's case, we find that "abnormal circumstances" existed which would preclude operation of the *Goode* waiver rule, if applicable, to this type of error. *See United States v. Morrison,* 3 M.J. 408, 409 (C.M.A.1977).

■ Various matters in a staff judge advocate's review may have different effects on a reviewing authority in his decision not to suspend a sentence as recommended by a military judge. However, a statement of waiver of restoration and request for immediate discharge are critical, if not controlling, factors in such a decision. Moreover, the opportunity to protest the inclusion of such misinformed requests of the appellant noted in the post–trial review might not suffice to fully erase their devastating impact on a nonlawyer reviewing authority. Finally, there is more involved in this case than simple error by a staff judge advocate in his post–trial review for a reviewing authority's sentencing action. A convicted service member's right by statute and service regulation to seek execution of his ap-

---

**5.** We are unable to determine whether the convening authority also considered this information in rejecting the recommendation of the military judge and approving this sentence without suspension. It is not clear at what point these materials were attached to the record of trial, although they were completed fifteen days before his action. No other reason,

however, was offered by the convening authority for his action.

**6.** *Cf. Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 740–741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

proved discharge or "residual clemency" was used against the appellant in an unintended and prejudicial way. *See* para. 16, SECNAVINST 5815.3C. The *Goode* waiver rule is not applicable under these circumstances.

The decision of the United States Navy Court of Military Review is affirmed as to findings, but reversed as to sentence. The actions of the convening and supervisory authorities in this case are set aside with respect to sentence. The record of trial is returned to the Judge Advocate General of the Navy for referral to different convening and supervisory authorities for a new post–trial review and actions on the sentence.

Chief Judge EVERETT, concurs.

COOK, Judge (dissenting):

I do not perceive a violation of any service regulation in this case. Paragraph 8*b* of SECNAVINST 5815.3C (Aug. 31, 1973), specifically authorizes the use of NAVSO Form 5815/3. Paragraph 4*a* of that instruction states:

> Even though a sentence may have been ordered into execution pursuant to Section 0134, JAG Manual, or execution of the sentence is contemplated pursuant to Section 0135, JAG Manual, a punitive discharge may not, in fact, be executed until clemency review as provided for in this instruction has been completed.

Thus, the instruction requires a review by the Secretary as a condition precedent to the execution of a punitive discharge. This review exceeds the requirements of Article 71, Uniform Code of Military Justice, 10 U.S.C. § 871, to the extent it applies to adjudged dishonorable or bad–conduct discharges.[1] Section 0134 provides for the execution of a discharge after completion of appellate review and section 0135 deals with a request for immediate execution of

the discharge. Section 0135 authorizes the execution of the discharge after the following conditions have been met:

(1) That the accused has received a copy of the decision of the Navy Court of Military Review in his case;

(2) That the accused has had fully explained to him his right to petition the U.S. Court of Military Appeals for grant of review;

(3) That the accused does not have an appeal pending before the U.S. Court of Military Appeals;

(4) That the accused does not intend to appeal to the U.S. Court of Military Appeals but, nevertheless, understands that his request for immediate release does not affect his right seasonably to petition the U.S. Court of Military Appeals;

(5) That the accused has consulted counsel of his own choice; and

(6) That Naval Clemency and Parole Board review, under the provisions of SECNAVINST 5815.3 series, if applicable, has been completed.

As I interpret the import of section 0135, it authorizes a discharge to be executed upon completion of the mandatory review required by Article 66, UCMJ, 10 U.S.C. § 866, and compliance with the requirements of SECNAVINST 5815.3. In the present case, the authorities have not executed the appellant's discharge pursuant to the provisions of section 0135. Presumably the net effect of the section 0135 provisions is to allow execution of a discharge after an accused has been served with the decision of the Navy Court of Military Review, but before expiration of the period allotted an accused to petition this Court for grant of review, if no petition is, in fact, submitted by an accused. *See* Article 67(c), UCMJ, 10 U.S.C. § 867. The majority concede that appellant's execution of the form was not premature.[2] I cannot agree that the staff

---

1. In view of my resolution of the matter, I need not consider whether there is a conflict between paragraph 4a, SECNAVINST 5815.3C (Aug. 31, 1973), and Article 71, Uniform Code of Military Justice, 10 U.S.C. § 871, which authorizes the execution of some punitive discharges without review by a Secretary of the Armed Forces of the United States.

2. The principal opinion first implies that the accused was "obviously misinformed" about or "solicited" (10 M.J. 154, 158) to execute his

judge advocate's characterization of appellant's request as a demand for "immediate execution of the discharge" required compliance with section 0135. Here, the provisions of section 0135 are inoperative as the appellant's case is being considered by this Court; accordingly, the right to counsel provided by section 0135b(5) does not apply. Section 0134 applies because execution of his discharge has not been accelerated under 0135. If the staff judge advocate's "imprecise characterization" was vague, its ambiguity was waived by trial defense counsel's failure to object. *United States v. Morrison*, 3 M.J. 408 (C.M.A.1977).

Under some circumstances, a bad-conduct discharge can be executed, without referral "to the Secretary of the Navy (Naval Clemency and Parole Board) for clemency review," by using NAVSO Form 5815/3. Para. 9, SECNAVINST 5815.3C. The form, however, does not authorize execution of a discharge where there has been no compliance with either section 0134 or 0135. The form itself reflects that appellant was advised of the consequences of the request he made and SECNAVINST 5815.3C does not require consultation with counsel prior to submission of the request.

I have previously observed that the presence of counsel is not required at a post-trial interview with an accused for sentence purposes because the interview was the functional equivalent of an interview by probation officers. *United States v. Hill*, 4 M.J. 33, 48 (C.M.A.1977) (Cook, J., dissenting). I believe that waiver of the right to seek clemency review of a sentence by the

Secretary is a collateral matter that is not, according to my position in *United States v. Palenius*, 2 M.J. 86, 94 (C.M.A.1977) (Cook, J., concurring in the result), within the responsibilities of trial defense counsel. *See* my dissent in *United States v. Larner*, 1 M.J. 371, 376 (C.M.A.1976).

Even assuming that clemency review fell within trial defense counsel's area of responsibility and appellant could not waive his rights without consultation with counsel, here trial defense counsel was made aware of the execution of the request prior to the supervisory authority's action. In my opinion, this requires affirmance of the decision below for two reasons:

(1) His failure to object below waived any deficiency in the procedure giving rise to execution of the form and the discharge may be executed without review by the Secretary of the Navy (Naval Clemency and Parole Board).

(2) Service of the post-trial review on defense counsel waived any alleged deficiency in the review, which includes a reference to appellant's request. *United States v. Morrison, supra; United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

Furthermore, I disagree with the author judge's implication that a staff judge advocate cannot include matters in his review which are not found in the record of trial. The Court specifically recognized the practice in *United States v. Scott*, 20 U.S.C.M.A. 264, 43 C.M.R. 104 (1971), and *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958); and, the *Goode* rule was promulgat-

---

waiver of the Secretary of the Navy's review of the sentence; it then declares that the accused was "obviously misinformed or not properly advised as to the status of his case." *Id.* at 158. I find no hint in the record of any evidence to indicate that accused was "misinformed" or "solicited" or "not properly advised" in regard to the status of his case or the waiver. As to the accused's comment in his handwritten statement of the reasons for his request to the effect that "the camanding [sic] officer of the 5th Marines approved" the adjudged discharge, the accused may have been mistaken but no evidence suggests that the

mistake resulted from misadvice or misinformation given to him. In any event, the accused's apprehension as to to the nature of the convening authority's action was, as it turned out, correct. I do not see, therefore, that he was substantially disadvantaged by the circumstance that as of the date of the waiver the convening authority had not yet officially acted on the case. The accused's statement demonstrates that his waiver was prompted by his conclusion that he had "wasted enough time with" the Marine Corps and he did not "want to go back to duty."

ed to ensure that an accused has an opportunity to respond to adverse matters which were not considered during trial.

Finally, it does not appear that the Privacy Act is applicable to the present case. *See* 5 U.S.C. § 551(1)(F). Even assuming its applicability, the use of the request by the supervisory authority would clearly be authorized by 5 U.S.C. § 552a(b)(1).

Accordingly, I would affirm the decision of the United States Army Court of Military Review.